**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **MACSTEEL INTERNATIONAL USA CORP.** | * | **CIVIL ACTION NO.** |
| **VERSUS** | * | **SECTION “ ” ( )** |
| **“K” LINE PTE LTD., *in personam*, and THE M/V BELLINA COLOSSUS, HER TACKLE, EQUIPMENT, APPURTENANCES, ETC., *in rem.*** | * | **JUDGE** |
| | * | **MAGISTRATE** |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**VERIFIED COMPLAINT**

NOW INTO COURT, through undersigned counsel, comes Plaintiff Macsteel International USA Corp. (hereinafter, “Plaintiff” or “Macsteel”) and for its Verified Complaint against Defendants “K” Line Pte Ltd. (“K Line”), *in personam*, and the M/V BELLINA COLOSSUS (IMO No. 9552977), her tackle, equipment, appurtenances, etc., *in rem*, alleges upon information and belief as follows:

**JURISDICTION AND VENUE**

1. This is an action for damages to an ocean shipment of approximately 1,885 hot rolled steel wire rods in coils (the “Cargo”) transported in international commerce from Mormugao Port, India to Houston, Texas and New Orleans, Louisiana.
2. This is a claim within this Honorable Court’s admiralty and maritime jurisdiction, pursuant to Art. II, § 2 of the U.S. Constitution and 28 U.S.C. § 1333.
3. The following issues also concern a contract for the carriage of goods by sea to ports of the United States of America, in foreign trade, governed by the Carriage of Goods by Sea Act (“COGSA”), reprinted at 46 U.S.C. § 30701 (note), or, in the alternative, the Harter Act,

46 U.S.C. §§ 30701 *et seq.*, and thereby come within the jurisdiction of this Court pursuant to 28 U.S.C. § 1331.

4. This is also an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("Supplemental Admiralty Rules").

5. This Court has supplemental jurisdiction over any common law claims pursuant to 28 U.S.C. § 1367.

6. Jurisdiction and venue are proper in this Judicial District in accordance with Supplemental Admiralty Rule C and because the vessel negligence, crew negligence and/or K Line's negligence sued upon occurred in this Judicial District.

7. Venue is also proper in this Judicial District as to Defendants because Defendants are subject to personal jurisdiction in this Judicial District with respect to this action.

8. Jurisdiction is also proper in this Judicial District based on the Letter of Undertaking ("LOU") issued by Defendants' Protection and Indemnity Club, The Steamship Mutual Underwriting Association Limited ("Steamship"), on July 11, 2025 (attached as Exhibit A to the Verified Complaint), which states that the LOU was issued in favor of Macsteel in connection with claims for loss of and damage to its cargo of hot rolled steel wire rods in coils. The LOU is pled herein as if copied *in extenso*.

   a. In consideration of Macsteel refraining from the arrest of the M/V BELLINA COLOSSUS, Steamship undertakes to "file or cause to be filed … a restricted appearance under Supplemental Admiralty Rule E(8) and a Statement of Right of Interest in the Vessel under Supplemental Admiralty Rule C(6)(a)" on behalf of the

vessel owners in the United States District Court for the Eastern District of Louisiana, regardless of whether the M/V BELLINA COLOSSUS is within the jurisdiction of the Court.

b. It is the intent of this LOU that the rights of the parties shall be precisely the same as they would have been had the M/V BELLINA COLOSSUS been arrested and/or attached under process issued out of the United States District Court for the Eastern District of Louisiana, then taken into custody by the United States Marshal under said *in rem* and/or attachment process and then released upon the filing of a bond or undertaking in the customary form in the principal amount stated in the LOU.

c. Macsteel does not waive any of its rights under Supplemental Admiralty Rules, and Macsteel's abstention at this time from arresting the M/V BELLINA COLOSSUS, is not to be construed as a waiver of any of its rights under the Supplemental Admiralty Rules.

**<u>THE PARTIES</u>**

9. Plaintiff Macsteel International USA Corp. is a Delaware corporation, headquartered in Rye Brook, New York, USA. The subject Bills of Lading were negotiated to Macsteel, Macsteel is the lawful holder of the subject Bills of Lading and Macsteel was the ultimate consignee of the Cargo.

10. *In rem* Defendant the M/V BELLINA COLOSSUS (the "Vessel" or "BELLINA COLOSSUS") is a 2013 build bulk carrier vessel sailing under the flag of Singapore, approximately 200 meters in length and 32 meters in width, of 34227 GT and 60893 DWT, and bearing IMO No. 9552977 and MMSI No. 566923000. A maritime lien attached to the Vessel as a result of the damage to the Cargo.

11. *In personam* Defendant "K" Line Pte. Ltd. was and still is a foreign corporation and/or other legal entity, organized, created and existing pursuant to the laws of a foreign country or countries and is the owner and/or operator and/or charterer of vessels engaged in carriage of cargo, including the Cargo described herein, as common carrier on the high seas for hire, and was the registered owner of the M/V BELLINA COLOSSUS at all relevant times.

**FACTS AND CLAIMS**

12. Upon information and belief, at all times relevant to this suit, the M/V BELLINA COLOSSUS is and was owned by K Line.

13. On or around April 19, 2025, a total of 7,705 hot rolled steel wire rods in coils were loaded onboard the M/V BELLINA COLOSSUS in Mormugao Port, India in Hold Nos. 2, 3 and 4, as described in Bill of Lading Nos. KKLUGOA190401, KKLUGOA190402 and KKLUGOA190403, of which 3,445 hot rolled steel wire rods were to be delivered to New Orleans, Louisiana ("New Orleans Cargo") and 4,260 hot rolled steel wire rods were to be delivered to Houston, Texas ("Houston Cargo").

14. K Line and the Vessel's master were responsible for loading, stowing, dunnage, lashing and securing of the Cargo.

15. The Houston Cargo, covered by Bill of Lading Nos. KKLUGOA190401 and KKLUGOA190402, was in good order and condition when it was tendered to, loaded by and accepted by Defendants at the load port.

16. The New Orleans Cargo, covered by Bill of Lading No. KKLUGOA190403, was in good order and condition when it was tendered to, loaded by and accepted by Defendants at the load port.

17. The M/V BELLINA COLOUSSUS arrived in Houston Texas on or about June 20, 2025 and stevedores subsequently discharged the shipment of wire rods, the Houston Cargo, from Hold Nos. 2 and 4. Shifting was observed throughout the holds. Moreover, scattered coils were seen disarranged or stowed differently than the rest of the Cargo. Scattered coils were seen with turns bent or pulled to various degrees. After the first day of discharge, and later still as additional rows of cargo became visible, coils were observed shifting, leaning, failing to stand upright, collapsed, flattened, and/ or “pancaked” in stow. The damages were caused by careless, negligent and/or improper loading, stowing, dunnage, lashing and/or securing of the Houston Cargo.

18. After discharge in Houston, Texas was complete, the M/V BELLINA COLOSSUS proceeded to New Orleans to discharge the remaining Cargo, arriving at Associated Terminal in Chalmette, Louisiana on or about June 30, 2025.

19. The M/V BELLINA COLOUSSUS arrived in New Orleans, Louisiana on or about June 30, 2025 and stevedores subsequently discharged the shipment of wire rods, the New Orleans Cargo, from Hold No. 3. The shipment was not properly lashed with Signode or lashing wires. Shifting and settling was noted in the center of the compartment creating a large gap in the stow. To fill the gap, coils were stowed in an athwartship direction resulting in some coils settling into an “eye” up position. Coils stowed in the wings of the hold were heavily deformed and settled between frames, and numerous lower tiered coils were racked and leaning. During discharge operations, numerous coils became splayed/“slinkied” as a result of the cargo shifting and settling, loose packing, and faulty stow. Additional coils that were not “slinkied,” could not stand on their own and could not be stacked. Ultimately, upon the coils’ arrival at final destination in Nashville, Tennessee, the number of “slinkied”

coils totaled 644 and another 982 coils required repair due to their condition prohibiting stacking or shipping of the coils. The damages were caused by careless, negligent and/or improper loading, stowing, dunnage, lashing and/or securing of the New Orleans Cargo.

20. Upon information and belief, the captain and crew of the M/V BELLINA COLOSSUS proceeded to sail from Mormugao Port, India to Houston, Texas to New Orleans, Louisiana with knowledge that Cargo remained in the cargo holds that was not properly stowed, dunnaged, lashed and/or secured following stevedore operations.

21. Upon information and belief, the collapse, shifting and movement of the Cargo during the voyage between Mormugao Port, India to Houston, Texas to New Orleans, Louisiana was a direct consequence of the captain and crew of the M/V BELLINA COLOSSUS's failure to properly secure, stow and care for the Cargo, which resulted in unstable stowage that exposed the Cargo to damage.

22. In addition to value of the physical loss of or damage to the Cargo, which required repair, there were additional losses including, but not limited to, additional unloading fees, additional equipment charges, fuel charges, excess sorting and handling fees, stevedoring costs, survey fees, and other extra costs and damages.

23. Due to the negligence of the captain and crew of the M/V BELLINA COLOSSUS, Macsteel was forced to incur additional costs of $32,375.00 to repair 259 damaged hot rolled steel wire rods discharged in Houston, Texas; and incurred additional costs of $162,600.00 to repair 1,626 damaged hot rolled steel wire coils discharged in New Orleans, Louisiana.

24. Additional costs incurred by Macsteel as a result of the negligence of the captain and crew of the M/V BELLINA COLOSSUS include additional discharge costs of $15,000.00,

excess handling costs of $26,445.18, additional material costs of $4,920.00, fuel surcharges of $402.82 and surveyor costs of $20,525.59.

25. Total estimated damages and expenses are in excess of $247,268.59, which may continue to accrue, no part of which has been paid, although duly demanded.

26. Macsteel has and claims a maritime lien against the M/V BELLINA COLOSSUS, her engines, boilers, tackle, etc. for the aforesaid damages and loss in the aggregate sum of $247,268.59, plus attorneys' fees and expenses, with interest thereon and costs and disbursement, for all attendant damages directly or indirectly attributable to the circumstances described above.

27. Macsteel has suffered extensive pecuniary damages as a result of the condition of the Cargo, as well as increased expenses, including ongoing legal fees and costs, in its effort to mitigate those damages.

28. Prior to commencement of this action, the subject Bills of Lading were negotiated to Macsteel and Macsteel became the lawful holder of the Bills of Lading and the owner of the Cargo described above.

29. Macsteel and its predecessors in title have performed all of the conditions precedent on their part to be performed under the terms of the aforesaid Bills of Lading and otherwise.

30. The above-described damages to the Cargo were not caused by any act and/or omission of Macsteel.

31. The terms and conditions of a certain charter party, including the law and arbitration clause, are incorporated into the subject Bills of Lading. The arbitration clause provides for London arbitration.

32. By reason of the damages to the Cargo, Macsteel has demanded arbitration in London with K Line in accordance with the terms and conditions of the charter party incorporated into the subject Bills of Lading.

33. Macsteel brings this action as lawful holder of the subject Bills of Lading and owner of the Cargo.

## FIRST CAUSE OF ACTION

34. Macsteel reiterates and re-avers the allegations of Paragraphs 1 through 33 of this Verified Complaint.

35. The Houston Cargo, covered by Bill of Lading Nos. KKLUGOA190401 and KKLUGOA190402, was in good order and condition when it was tendered to, loaded by, and accepted by Defendants at the load port, but it was not delivered to Macsteel at the discharge port of Houston in the same good order and condition; instead, the Houston Cargo, covered by Bill of Lading Nos. KKLUGOA190401 and KKLUGOA190402, was damaged, shifted, scattered disarranged, leaning, collapsed, flattened, "pancaked," improperly loaded, stowed, dunnaged, lashed and/or secured, and bent or pulled to various degrees.

36. The New Orleans Cargo, covered by Bill of Lading No. KKLUGOA190403, was in good order and condition when it was tendered to, loaded by, and accepted by Defendants at the load port, but it was not delivered to Macsteel at the discharge port of New Orleans in the same good order and condition; instead, the New Orleans Cargo, covered by Bill of Lading No. KKLUGOA190403, was damaged, shifted, scattered disarranged, leaning, collapsed, flattened, "pancaked," improperly loaded, stowed, dunnaged, lashed and/or secured, and bent or pulled to various degrees.

37. The aforementioned conditions of the M/V BELLINA COLOSSUS and damages were in no way attributable to any fault, negligence or want of care on the part of Macsteel, but rather were the result of, and caused by the fault, negligence, unseaworthiness and/or want of care of the M/V BELLINA COLOSSUS and/or its owners, operators, managers, other charterers, and/or agents, including K Line, which was the registered owner of the M/V BELLINA COLOSSUS at all pertinent times, all of which was a breach of Defendants' obligations under the governing contract(s) of carriage as a carrier and/or bailee of the Cargo and/or the governing scheme of liability, in the following non-exclusive respects:

a. By failing to maintain and monitor the Vessel's condition;

b. By failing to use due care under the circumstances;

c. By failing to take appropriate corrective actions;

d. By failing to properly inspect and maintain the Vessel and the Cargo;

e. By failing to properly load, stow, dunnage, lash, secure and discharge the Cargo aboard and from the Vessel;

f. By failing to deliver the Cargo in good order and condition;

g. By failing to train and/or supervise the crew;

h. By failing to reasonably ensure the safety of the Cargo;

i. By allowing the Vessel to sail with the Cargo insufficiently stowed, dunnaged, lashed and secured, unstable, and/or unreasonably exposed to potential damage;

j. By failing to provide a seaworthy ship;

k. By failing to exercise due care for the custody of the Cargo, breach of bailment, misinformation, and/or reckless and gross negligence; and

l. Any and all acts of negligence, fault, statutory violations and/or lack of due care, to be proven at trial.

38. Defendants are liable for the loss of and damage to the Cargo.

39. This cause of action is brought, *inter alia*, under 9 U.S.C. § 8 in respect of Macsteel's claim against Defendants and, if necessary, to recognize and enforce the arbitration award, when rendered, as a judgment of this Court.

**SECOND CAUSE OF ACTION**

40. Plaintiff reiterates and re-avers the allegations of Paragraphs 1 through 39 of this Verified Complaint.

41. The damage to the Cargo was caused, in whole or in part, by K Line's negligence, want of care, fault, incompetence and failure to provide a seaworthy vessel with a properly trained crew to properly maintain and care for the Cargo, all of which was a breach of the obligations as a carrier and a vessel owner under the governing contract(s) of carriage as a carrier and/or bailee of the Cargo and/or the governing scheme of liability.

42. K Line is liable for the loss of and damage to the Cargo.

43. Macsteel reserves the right to supplement and/or amend this Verified Complaint, to include any additional *in personam, in rem,* Supplemental Admiralty Rule B and/or *quasi in rem* claims as may become available after further investigation and/or discovery.

44. This cause of action is brought, *inter alia*, under 9 U.S.C. § 8 in respect of Macsteel's claim against Defendants and, if necessary, to recognize and enforce the arbitration award, when rendered, as a judgment of this Court.

45. All and singular the matters aforesaid are true and correct.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Macsteel International USA Corp. prays:

1. That Defendants "K" Line Pte. Ltd., *in personam*, and the M/V BELLINA COLOSSUS, *in rem*, be served with copies of this Verified Complaint, together with summonses to appear and answer under oath all and singular the matters aforesaid;
2. That the Court retain jurisdiction to enter judgment in favor of Plaintiff on any award rendered in the London arbitration;
3. That the Court order, adjudge and decree that Defendants "K" Line Pte. Ltd., *in personam*, and the M/V BELLINA COLOSSUS, *in rem*, pay Plaintiff the losses sustained by it, together with interest thereon, its costs and disbursements, and attorneys' fees and costs; and
4. That the Court grant such other and further relief as may be just in the circumstances.

Respectfully submitted,
**DEGAN, BLANCHARD & NASH**

*<u>/s/ Philip C. Brickman</u>*
Sidney W. Degan, III (#4804)
Philip C. Brickman (#25586)
Richard W. Schwerdtfeger (#37298)
Alina Pagani (#26455)
400 Poydras Street, Ste. 2600
New Orleans, LA 70130
P: 504-529-3333
F: 504-529-3337
Email: sdegan@degan.com
pbrickman@degan.com
rschwerdtfeger@degan.com
apagani@degan.com
**COUNSEL FOR PLAINTIFF MACSTEEL INTL. USA CORP.**

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **MACSTEEL INTERNATIONAL USA CORP.** | * | **CIVIL ACTION NO.** |
| **VERSUS** | * | **SECTION " " ( )** |
| **"K" LINE PTE LTD., *in personam*, and THE M/V BELLINA COLOSSUS, HER TACKLE, EQUIPMENT, APPURTENANCES, ETC., *in rem*.** | * | **JUDGE**<br>**MAGISTRATE** |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**VERIFICATION**

I, DINETAH SIMS, state and declare as follows:

1. I am over 18 years of age, and I am competent to make and swear to the statements made herein. The facts stated below are true and correct and are based on my personal knowledge.
2. That I am the Managing Director of Macsteel International USA Corp., the Plaintiff in the above-styled action.
3. I verify under solemn affirmation that I have read the referenced Verified Complaint and that all of the allegations of fact contained therein are true and correct to the best of my information, knowledge and belief.
4. Pursuant to 28 U.S.C. § 1746, I solemnly declare under penalty of perjury that the foregoing is true and correct.

Executed on the 19th day of June 2026.

DINETAH SIMS